E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698
     Facsimile: (213) 894-3713
     E-mail:    jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-00021-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT ANDREW ZEPEDA HANSACK; EXHIBITS; DECLARATION OF SPECIAL AGENT CHRIS SEYMOUR |
| v. | |
| ANDREW ZEPEDA HANSACK, | |
| Defendant. | SENTENCING DATE: 06/26/2023 |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeff Mitchell, hereby files its position related to the sentencing of defendant Andrew Zepeda Hansack.

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report, the attached exhibits and declaration, and such further evidence and argument as the Court may permit.

Dated: June 13, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


          */s/ Jeff Mitchell*
JEFF MITCHELL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant is a tax preparer who filed thousands of fraudulent tax returns causing a tax loss in the millions.  On February 27, 2023, defendant pled guilty to a two-count information, which charges him with Aiding in the Preparation of False Tax Returns.  (PSR ¶¶ 1-2.)  In defendant's plea agreement, he admitted to the following facts:

> Beginning in or about January 2015, defendant prepared personal income tax returns for clients at a business using the name AJ Loyal Income Tax Service. Defendant filed the tax returns using the Electronic Filing Identification Number ("EFIN") of a family member. Participation in the E-File Program facilitated the rapid filing of multiple returns.
>
> Defendant filed tax returns for some of his clients that included false Schedule A deductions (i.e., itemized deductions) for deductible points (mortgage interest not reported on IRS Form 1098).
>
> Specifically, defendant filed returns for these clients that indicated they had paid mortgage interest for their homes, when in truth, as defendant knew, his clients did not own a home. Defendant also claimed false medical expenses, sales tax, and gifts by cash or check on some tax returns he prepared that he knew to be false and inaccurate.
>
> For calendar years 2015 through 2019, defendant filed approximately 2,533 tax returns with false deductions on behalf of his clients. Because of the false deductions that defendant included in the tax returns he prepared for his clients, the IRS was prevented from assessing and collecting the correct amount of taxes owed by the clients, resulting in a loss in assessed and collected taxes to the IRS between $3,369,886.64 and $3,799,378.34.
>
> Defendant charged his clients a fee for his services and instructed his clients to pay him via Venmo and personal check.  Defendant caused the monies he received to be deposited into a Citibank business account ending in x7186 for AJ Loyal Income Tax Service that defendant opened in January 2016. Defendant used the proceeds from his tax preparer business to purchase several luxury vehicles, including a 2018 Mercedes Benz, 2017 Mercedes Benz, 2016 Maserati, and a 2015 Mercedes Benz.

>As part of the scheme described above, on or about February 24, 2020, in Los Angeles County, within the Central District of California and elsewhere, defendant willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS, of a federal income tax return for the year 2019 for taxpayer R.V. from South Gate, California. The federal income tax return was false and fraudulent as to material matters, in that, as defendant well knew and believed, the return claimed false and fraudulent amounts of taxes due and owing based, in part, upon false and fraudulent representations as to $30,488 in itemized deductions, including deductions for mortgage interest not reported on IRS Form 1098. As a result of these false and fraudulent deductions, defendant caused taxpayer R.V. to claim a refund from the IRS in the amount of $7,318 to which the taxpayer was not entitled.
>
>As further part of the scheme described above, on or about March 16, 2020, in Los Angeles County, within the Central District of California and elsewhere, defendant willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS, of a federal income tax return for the year 2019 for taxpayer D.B. from Inglewood, California. The federal income tax return was false and fraudulent as to material matters, in that, as defendant well knew and believed, the return claimed false and fraudulent amounts of taxes due and owing based, in part, upon false and fraudulent representations as to $30,388 in itemized deductions, including deductions for mortgage interest not reported on IRS Form 1098. As a result of these false and fraudulent deductions, taxpayer D.B. claimed a refund from the IRS in the amount of $7,155 to which the taxpayer was not entitled.

(Plea Agreement ¶ 12.)

## II.  THE PRESENTENCE REPORT

The United States Probation Office ("USPO") prepared a Presentence Report ("PSR"), which was disclosed to the parties on April 18, 2023.  The PSR calculated the total offense level applicable to defendant to be 21.  (PSR ¶ 39.)  The PSR also calculated a criminal history category of II.  (PSR ¶ 47.)  The PSR calculated the guideline sentence to be 41 to 51 months' imprisonment, one year of supervised release, a fine range between $15,000 and $150,000, and a mandatory special assessment of $200.  (PSR ¶¶ 87, 89, 96, 97.)

2

### III. PROBATION OFFICE'S RECOMMENDATION

The United States Probation Office has recommended the following sentence: a 24-month term of imprisonment, a three-year term of supervised release, restitution in the amount of $3,369,886.64, a fine of $50,000, and a special assessment of $200. (USPO Recommendation Letter at 1-2.)

### IV. NEW CRIMINAL CONDUCT

The government has learned that defendant has violated the terms of his pre-trial release and committed new criminal conduct.

Specifically, when defendant was released on bond in this matter, the magistrate judge ordered defendant not to engage in the preparation of tax returns while on release. (ECF 9.) Despite the Judge's order, defendant has continued his business of preparing tax returns. (Seymour Declaration ¶ 2.)

Defendant is now using the electronic filing identification number ("EFIN") of Alexandra Sanchez to file thousands of additional tax returns. (Id. ¶ 5.) Ms. Sanchez appears to be defendant's live-in girlfriend. (Id. ¶ 5; PSR ¶ 61.)

In addition to refusing to comply with the magistrate judge's order not to prepare tax returns while on release, defendant also appears to have continued his pattern of filing false and fraudulent tax returns. Indeed, the IRS case agent interviewed several of defendant's new clients and reviewed their tax returns. In those returns, defendant claimed false deductions for IRA contributions, childcare expenses, and business expenses. (Seymour Declaration ¶¶ 11-13.)

As described in the agent's declaration, he identified 1,625 tax returns filed by defendant in 2023. (Id. ¶ 10.) Of these 1,625

3

returns, 1,186 returns (72.9%) claimed IRA deductions. (Id. ¶ 15.) The IRS agent noted that this is an unusually high rate of IRA deductions. Indeed, only 1.19% of households in Riverside, California, claimed IRA deductions for tax year 2022. (Id.)

While the agent was only able to interview eight of defendant's new clients, all of them admitted that the IRA deductions that defendant submitted to the IRS were false.

From the 1,186 returns that defendant filed for tax year 2022, the IRA deductions totaled $7,194,667.00. Assuming the very low end of the tax rate schedule (10%), defendant's new conduct would result in an additional tax loss of $719,467 based on the false IRA deductions alone. (Id.) This number does not account for false Schedule Cs, false childcare expenses, or false Schedule As which have been found in the returns defendant recently filed for tax year 2022.

Not only is this new conduct significant because it shows a continued pattern of fraud, but it also shows that defendant is modifying his criminal conduct to prevent detection by law enforcement. As described in the factual basis, defendant was previously identified as a potential target because of the infrequently used deduction he claimed on behalf of his clients -- mortgage interest not reported on a 1098 form. Defendant has now changed his pattern of filing fraudulent returns away from the infrequently claimed mortgage interest deductions and is now claiming false IRA deductions and other more common deductions.

Defendant's new criminal conduct, and his refusal to follow court orders, are aggravating factors that require a significant

period of incarceration to deter defendant from committing new crimes upon his release from prison.

**V.    OBJECTIONS TO THE PRESENTENCE REPORT**

The United States objects to the findings set forth in the PSR. Specifically, the government objects to the tax loss calculation and restitution.

**A.    AMOUNT OF TAX LOSS**

During the initial investigation, IRS identified 2,533 tax returns with false deductions for mortgage interest not reported on a 1098 form. Based on IRS' calculations, the tax loss is $3,799,378.34. (PSR ¶ 18(a).) However, due to the size and complexity of defendant's fraud scheme, the IRS was unable to interview all of the relevant taxpayers in this case.

For those reasons, the parties were unable to agree and stipulate to the amount of the tax loss. Instead, the parties stipulated to a range of tax loss between $3,369,886.64 and $3,799,378.34. The PSR correctly notes that the amount of tax loss affects the base offense level -- either 22 or 24. (PSR ¶ 28.) The probation office used the lower figure to account for any margin of error. The government hereby objects.

The government submits that the tax loss for the underlying offense is $3,799,378.34, which corresponds to a base offense level of 24. This tax loss figure is the precise amount calculated by the IRS. (PSR ¶ 18(a).) The government acknowledges that the IRS was unable to interview all of the taxpayers from the 2,533 returns defendant prepared, but defendant should not benefit simply due to the size of his fraud scheme.

5

Further, the application notes in Section 2B1.1 provide guidance to the Court when calculating loss in financial fraud cases. Specifically, Application Note 3(C) provides that "the court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference."  The same application note further provides that "the estimate of the loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances. . . ."

In addition to the tax loss from the underlying case, the government submits that defendant's new criminal conduct should be considered relevant conduct under § 1B1.3, thereby increasing the tax loss by $719,467.  In total, the government submits that the tax loss is $4,518,845 ($3,799,378.34 + $719,467), which corresponds to a base offense level of 24.

**B.  COMMISSION OF OFFENSE WHILE ON RELEASE**

USSG § 3C1.3 provides for a three-level enhancement if the defendant committed the offense of conviction while on release.  The government does not recommend this enhancement here.

The Guidelines indicate that this enhancement applies only if the sentencing enhancement under 18 U.S.C. § 3147 applies.

Title 18, United States Code, Section 3147 provides as follows:

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense, to [] a term of imprisonment of not more than ten years if the offense is a felony.

6

Here, defendant's new criminal conduct should be considered relevant conduct and not part of the offense of conviction. For this reason, the government does not support this enhancement.

### C. GUIDELINES CALCULATION

The government submits that the appropriate Guidelines calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level | USSG § 2T4.1(J) | 24 |
| Specific Offense Charc. | USSG § 2T1.4(B)(1) | +2 |
| Acceptance of Respon. | USSG § 3E1.1 | -3 |
| Total Offense Level | | 23 |

Based on a criminal history category of II, the corresponding range is 51-63 months' imprisonment.

## VI. THE GOVERNMENT'S RECOMMENDATION

The United States objects to the Probation Officer's recommended sentence. Accordingly, and as set forth herein, the United States submits that defendant should be sentenced at the high end of the guideline range,[1] for an overall offense level of 23 and a criminal history category II, that is, a term of 63 months' imprisonment, followed by a one-year term of supervised release, restitution in the amount of $4,518,845, a fine of $100,000 per count for a total fine of $200,000, and a mandatory special assessment of $200.[2] The recommended sentence addresses the

---

[1] In United States v. Booker, 125 S. Ct. 738 (2005), the United States Supreme Court held that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." 125 S. Ct. at 757.

[2] The United States, thus, hereby moves and requests the Court to grant defendant the additional 1-level reduction, pursuant to Section 3E1.1(b) of the Sentencing Guidelines based on the timely notification of defendant's intention to plead guilty. U.S.S.G. § 3E1.1(b).

7

considerations set forth at 18 U.S.C. § 3553(a), as discussed herein.

### A. The Nature and Circumstances of The Offense and the History and Characteristics of the Defendant

Section 3553(a)(1) provides that the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant.

Defendant was raised in a middle-class home in a Los Angeles suburb. (PSR ¶ 57.) He attended community college at East Los Angeles College but did not graduate or obtain any certifications. (PSR ¶ 72.) Defendant is now a widow and has two teenage sons. (PSR ¶ 60.)

Despite the lack of a certification or specialized training in tax preparation, defendant operated his own tax preparation business -- AJ Loyal Tax Services -- in Riverside, California. (PSR ¶ 11.)

Defendant's offense is serious and occurred over a period of at least five years. During that time, he prepared thousands of false tax returns that caused a tax loss to the United States of more than $4 million.

### B. THE NEED FOR THE SENTENCE IMPOSED

Section 3553(a)(2) provides that in determining the particular sentence, the Court shall consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.

The government submits that defendant lacks a proper respect for the law and is a significant risk of recidivism. Not only does

8

defendant have a prior fraud conviction, but his offense conduct shows a pattern of fraud over a period of at least five years.

Further, and most troubling, is that defendant continued his criminal conduct while on bond awaiting sentencing. Defendant's most recent conduct demonstrates that he is very likely to continue to file false and fraudulent tax returns upon his release from prison. For these reasons, a significant period of incarceration is necessary.

Moreover, defendant appears to have provided false information to the probation officer on at least two issues. First, in paragraph 54 of the PSR, defendant referred the probation officer to a man named "Alexander Sanchez," at a phone number ending in x6585, to corroborate defendant's history.[3] This same phone number is associated with the EFIN application of a woman named "Alexandra" Sanchez. This is the same individual described above related to defendant's new criminal conduct. During the same interview in which defendant provided the name "Alexander Sanchez" to the probation officer, he also told the probation officer that he is in a relationship with a woman named "Sandy" but did not provide her last name. (PSR ¶ 61.)

Second, defendant appears to have misled the probation officer on a second issue, namely, his income and monthly cash flow. Not only did defendant fail to provide bank statements, fail to identify the value of his cars, but defendant failed to notify the probation officer of his continued stream of cash income from the 1,625 tax

---

[3] The probation officer advised the government that she has only been able to text message with this individual. The probation officer also described Sanchez' behavior as "cagey."

9

returns he filed earlier this year which resulted in an additional $325,000 in personal income.

The government recognizes that defendant accepted responsibility early in this matter and agreed to plead guilty without the filing of an indictment, and waived his right to full discovery. Nonetheless, defendant's post-plea agreement conduct is egregious and undermines the mitigating factors.

### C.   NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES

Section 3553(a)(6) provides that in determining the particular sentence, the Court shall consider the need to avoid unwarranted sentence disparities.  Following the recommended sentencing guideline range will avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## VII. DEFENDANT SHOULD BE REMANDED INTO CUSTODY

Defendant has violated the terms of his pre-trial release.  The government does not intend to revoke his bond or move to find defendant in breach of his plea agreement; however, the government submits that defendant should be remanded into custody.

Defendant has demonstrated a failure to follow court orders and continues to commit new crimes.  For these reasons, defendant should be immediately remanded into custody upon the imposition of sentence.

## VIII.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 63 months' imprisonment, one-year period of supervised release, restitution in the amount of $4,518,845, a fine of $100,000 per count for a total fine of $200,000, and a special assessment of $200.

DECLARATION OF CHRIS SEYMOUR

I, Chris Seymour, declare as follows:

1. I am a Special Agent ("SA") with the Internal Revenue Service Criminal Investigation. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. In summary, I have learned that defendant Andrew HANSACK continued to file false and fraudulent tax returns after he signed a plea agreement in this matter. Witnesses confirmed that HANSACK prepared their tax returns in 2023, that the returns were fraudulent as a result of false IRA contributions, false Schedule C business expenses, and false childcare expenditures. Witnesses stated that they were not aware of the deductions and did not authorize HANSACK to make such false claims.

3. Specifically, in April 2023, I received a referral from a citizen complaint about defendant Andrew HANSACK. The complainant indicated that they had a problem with their income tax return that was prepared by HANSACK.

4. After I interviewed the complainant, I obtained and reviewed the complainant's federal tax return for tax year 2021 and learned that it was filed with Electronic Filing Identification Number ("EFIN") x4191.

5. I reviewed the EFIN application for x4191 and learned that the authorized user of EFIN x4191 is "Alexandra Sanchez," with a corresponding phone number ending in x6582. I attempted to contact Alexandra Sanchez at phone number x6582 but she did not return my call. Public sources indicate that Ms. Sanchez resides at the same address as HANSACK.

6. I subsequently mailed letters to a random sample of taxpayers who filed returns through EFIN x4191 in 2023. Approximately eight taxpayers responded to my letters and I subsequently interviewed them.

7. During the interviews, the taxpayers identified HANSACK as the individual who prepared their 2022 tax returns, and all were submitted to the IRS in 2023 after defendant HANSACK made his initial appearance and was ordered not to prepare tax returns. Summaries of the interviews are included in the attached exhibits.

8. During the witness interviews, several of the taxpayers identified HANSACK by name, phone number ending in x2145, and as operating out of the furniture stores located on Magnolia Blvd in Riverside. In addition, several of the taxpayers indicated that they communicated with HANSACK in 2023, and sent copies of their W2s to HANSACK, via text message with phone number x2145.

9. I reviewed defendant HANSACK's Citibank application and observed that HANSACK listed the same phone number x2145 as belonging to him.

10. In 2023, EFIN x4191 filed 1,625 federal income tax returns from IP address 172.9.187.23, which I traced to Riverside, California, from public sources.

11. Based on my review of tax returns prepared by HANSACK in 2023 with EFIN x4191, I identified several deductions that appeared to be false and fraudulent. Most of the suspected deductions related to IRA contributions; however, I also found deductions for childcare and business expenses. I subsequently determined through witness interviews that these deductions were false and fraudulent.

12. When I interviewed the taxpayers, they denied knowledge of the false deductions in the tax returns and some provided their text messages with HANSACK to show that they did not provide any documentation to HANSACK to support or request such false deductions.

13. During the witness interviews, I identified two witnesses who indicated that HANSACK used names and social security numbers of individuals they did not recognize to claim false deductions. For example, the tax return for M.C. claimed childcare expenses paid to A.A. Not only did M.C. deny that she paid A.A., but I identified A.A. as a prior client of HANSACK. Based on my training, experience, and knowledge of this investigation, I believe that HANSACK used the social security number of his prior client A.A. to claim false childcare deductions for M.C.

14. From the witness interviews, I learned that HANSACK charged his customers approximately $200 per return in 2023. Based on the use of EFIN x4191 in 2023, I believe that HANSACK filed 1,625 tax returns in 2023, which would result in approximately $325,000 in revenue to HANSACK.

15. Of these 1,625 returns, 1,186 returns (72.9%) claimed IRA deductions. Based on my training, experience, and knowledge of this investigation, I believe this is an unusually high rate for IRA deductions. For example, based on 2023 tax data, I am aware that only 1.19% of households in Riverside, California, claimed IRA deductions for tax year 2022. From the 1,186 returns that defendant filed for tax year 2022, the IRA deductions totaled $7,194,667.00. Assuming the very low end of the tax rate schedule (10%), defendant's new conduct would result in an additional tax loss of $719,467 based on the false IRA deductions alone. This number does not account for

3

false Schedule Cs, False childcare expenses, or False Schedule As which have been found in the returns defendant HANSACK recently filed for tax year 2022.

16. EFIN x4191 is not the same EFIN HANSACK used to file the tax returns in the instant matter for tax years 2015-2021. Based on my training, experience, and knowledge of this investigation, I believe HANSACK used a new EFIN to prevent law enforcement from detecting his new criminal conduct.

17. Further, with the exception of four tax returns, none of the 1,625 tax returns filed by EFIN x4191 identified a return preparer. Based on my training, experience, and knowledge of this investigation, I believe HANSACK deliberately failed to identify the return preparer on these tax returns in an attempt to further conceal the fact that he continued to file tax returns even though he was ordered to stop.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 13, 2023.

_____
CHRIS SEYMOUR