EISNER GORIN LLP
ALAN EISNER, State Bar # 127119
16000 Ventura Blvd., Suite 1000
Encino, CA 91436
Phone: (818) 781-1570
Email: alan@egattorneys.com

Attorney for Defendant,
ANDREW HANSACK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No.: CR 23-00021-SVW |
|---|---|
| Plaintiff, | ) **DEFENDANT ANDREW HANSACK' SENTENCING POSITION** |
| vs. | ) Sentencing: June 26, 2023 at 11:00 a.m. |
| ANDREW HANSACK, | ) |
| Defendant. | ) |

TO THE HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE, AND TO ASSISTANT UNITED STATES ATTORNEY JEFF MITCHELL:

    Defendant Andrew Hansack, by and through his counsel of record Alan Eisner, hereby submits his Sentencing Position. Defendant's position is based on the Pre-sentence Report ("PSR"), this sentencing position and exhibits, and upon any oral argument that may be presented at the hearing pursuant to Federal Rule of Criminal Procedure, Rule 32(c)(1).

                                           Respectfully submitted,

                                           EISNER GORIN LLP

Dated: June 19, 2023          */S/ ALAN EISNER*

                                           ALAN EISNER
                                           Attorney for Defendant
                                           ANDREW HANSACK

# I.  INTRODUCTION

"I would like to say I am sorry for my actions and take full responsibility for them and I teach my kids to not follow my footsteps and not make the same mistake as I did throughout my life. I teach them hard work is the best route in life and they should be grateful for what we have in life. Once again I am sorry for burden I brought to the government and my kids and family by my irresponsible actions."

The words of Defendant Andrew Hansack, quoted above from his letter to the Court (Exhibit A), demonstrate his complete and unreserved acceptance of responsibility. Defendant comes before the Court for sentencing on Counts 1 and 2, aiding and assisting in the preparation of a false tax return (26 U.S.C. § 7206(2)).  Mr. Hansack, a 40 year-old widower and single father to two teenage sons, faces his first prison sentence.  He understands and accepts that a significant custodial sentence is warranted based on his preparation of tax returns for clients which included false deductions, resulting in a tax loss to the IRS of over $3,000,000 between tax years 2015 and 2019.  Though uncharged and unproven at this time, Defendant takes very seriously the Government's argument that he has continued to file tax returns including with false deductions despite the condition of his pretrial release prohibiting him from engaging in tax preparation.  (Dkt. 19 at 5-6.)  Defendant does not contest that he continued to work in tax preparation in 2023 which, while motivated by a desire to continue providing for his family, was unacceptable and contrary to the Court's orders.

Nevertheless, the advisory sentencing guidelines for economic loss produce an advisory sentencing range which is unduly harsh and does not accurately capture the seriousness of his crime or her relative culpability.  Based on the these factors and those listed in § 3553(a), Defendant will respectfully concur with probation's recommendation and request that the Court impose a sentence of 24 months.

///
///
///
///

## II. THE ADVISORY GUIDELINES RANGE

Defendant concurs with the probation department that a literal application of the guidelines, as written, would result in a total offense level 21 and a criminal history category II, resulting in a range of 41 to 51 months. Defendant notes that this range includes a three-level reduction in offense level in recognition of Defendant's timely and full acceptance of responsibility. (PSR ¶¶ 37-38.) Probation recommends a sentence of 24 months, representing a variance from the guidelines range. (Dkt. 14 at 2.)[1]

**A.  The draconian economic loss enhancement of Section 2B1.1 produces guideline ranges which are unreasonably harsh**

The expectation that the guidelines yield an appropriate sentence - *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007); *but see Peugh v. United States*, 133 S.Ct. 2072, 2080 (2013) – is only reasonable to the extent the Sentencing Commission fulfills its "important institutional role," to "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 128 S.Ct. 558, 574 (2007). Where the Commission fails to fulfill this mandate, the sentencing court should properly conclude that the strict application of the guidelines will yield a sentence greater than necessary to achieve the goals of sentencing under § 3553. *Ibid*.

The *Kimbrough* court recognized just such an unjust result under the guidelines regarding crack cocaine. As the Supreme Court detailed at length, the guidelines for crack were fundamentally flawed from the outset in that they failed to rely on empirical data and expert deliberations; being based instead on faulty premises and fears of harms which never materialized. The analysis of *Kimbrough* applies with equal force to the Commission's current treatment of economic loss enhancements.

The Commission justifies the quickly escalating guidelines sentences based on loss amount by stating that "loss serves as a measure of [both] the seriousness of the

---

[1] Probation elsewhere refers to a sentence of 12 months, but Defendant assumes based on context that this is a typo. (Dkt. 14 at 4.)

offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline." U.S.S.G. § 2B1.1, background. But the use of economic loss as a proxy for the seriousness of an offense in many cases results in a form of double-counting given the guidelines' inclusion of other specific enhancements directed at particularly egregious fraud and theft-related conduct. See e.g. U.S.S.G. § 2B1.1(b)(10) (sophisticated means); 2B1.1(b)(2) (large number of victims); 2B1.1(b)(20) (violation of securities laws when defendant was an officer, director, etc.); 2B1.1(b)(17)(A) (gross receipts of over $1 million from a financial institution). It also ignores important factors such as the degree to which the loss, even if an actual and not merely intended loss, has been offset by restitution payments or victim impact where the party suffering the loss is a private individual as opposed to an institutional victim such as the U.S. treasury.

Economic loss is also a poor proxy for the relative culpability of the defendant as it ignores critical information such as motive. See *United States v. Dikiara*, 50 F. Supp. 3d 1029, 1032 (E.D. Wis. 2014) (noting that "the [loss] guideline fails to take into account other relevant factors, including motive and culpability"). As one court put it, "the guidelines treat a person who steals $100,000 to finance a lavish lifestyle the same as someone who steals the same amount to pay for an operation for a sick child . . . [F]rom the victim's perspective the loss is the same no matter why it occurred. But from the standpoint of personal culpability, there is a significant difference." *United States v. Ranum*, 353 F.Supp.2d 984, 990 (E.D. Wis. 2005).

This disconnect between loss amount as a proxy for seriousness and culpability and the mandate of 18 U.S.C. § 3553 to impose a sentence which is sufficient, but not greater than necessary, has led to numerous courts imposing below-guidelines sentences in fraud and theft cases where the loss amount is the primary driver of the guidelines range. See e.g. *United States v. Musgrave*, 647 Fed. App'x 529, 530, 538 (6th Cir. 2016) (affirming downward variance for defendant with offense level of 25 and a $1.7 million loss to a sentence of one day of imprisonment, reasoning that "because the loss

4

Guidelines were not developed using an empirical approach based on data about past sentencing practices, it is particularly appropriate for variances"); *United States v. Moody*, 2013 U.S. Dist. LEXIS 109506, at *14 (D. Colo. Aug. 5, 2013) (adopting view that the loss guidelines are "fundamentally flawed"); *United States v. Johnson*, 2018 U.S. Dist. LEXIS 71257 at *11–12 (E.D.N.Y. Apr. 26, 2018) (reasoning that the "loss-enhancement numbers do not result from any reasoned determination of how the punishment can best fit the crime, nor any approximation of the moral seriousness of the crime" and imposing 24-month sentence in case with $3.1 million loss amount); *United States v. Parris*, 573 F. Supp. 2d 744, 745, 747–48 (E.D.N.Y. 2008) (finding that application of 18-point loss enhancement was "patently absurd" and varying downward 17 points for defendant with $2.5 million loss); *United States v. Farha*, No. 8:11-cr-00115-JSM-MAP (M.D. Fl. May 19, 2014), ECF No. 882, 885, 888, 891, 903 at 91–2 (varying downward by up to 16.5 years as to defendants convicted at trial of an $11 million fraud from Guideline ranges of 97–293 months, issuing sentences between 12–36 months); *United States v. Gupta*, 904 F. Supp. 2d 349, 353 (S.D.N.Y. 2012), aff'd, 747 F.3d 111 (2d Cir. 2014) (24-month sentence for defendant with $5 million loss).

Given the well-below guidelines sentences imposed by courts around the country in cases involving substantially higher loss amounts, a significant downward variance is appropriate. As noted above, probation concurs with this assessment. Finally, it must be noted that while the IRS suffered a tax loss in excess of $3,000,000 – a figure Defendant does not dispute – due to improper deductions Defendant claimed on his tax preparation clients' behalf, there is no allegation that he personally profited from these deductions outside of the fee he charged the clients for the tax preparation work itself. The $3,000,000 underpayment inured to the benefit of the individual taxpayers themselves, not to Defendant. There is likewise no allegation that Defendant charged an excessive fee, received a kickback, or otherwise personally benefited from the improper deductions.

5

Probation's financial assessment confirms this.  Defendant has a total monthly cash flow of $2,268.13.  (PSR ¶ 77.)  He lives in a $500,000 house with a $350,000 outstanding mortgage.  (PSR ¶ 79.)

### B. Criminal history category II substantially overstates Defendant's history and risk of future criminality

Defendant has two criminal history points deriving from a 2007 conviction for passing a bad check in violation of California Penal Code § 470(d).  This offense is a "wobbler" under California law, meaning it can be charged as either a felony or a misdemeanor in the discretion of the prosecutor.  (Cal. Pen. Code § 473(a).)  Defendant was placed on probation for three years and ordered to serve 90 days in county jail.  (PSR ¶ 46.)  While no records of this 16 year-old conviction were accessible to probation, there is likewise no indication that Defendant failed to comply with the terms of probation or, indeed, suffered any subsequent negative contact with law enforcement between 2007 and his arrest in this case.

While a literal application of the guidelines supports the inclusion of these two criminal history points because he suffered the conviction within 10 years of the commencement of his offense conduct in this case, Defendant respectfully submits that criminal history category II overstates his record.  If the Court more properly regards him as having a criminal history category I, but otherwise accepts probation's guidelines calculation, his advisory guidelines range would be 37-46 months.

### III.  AN APPLICATION OF TITLE 18 U.S.C. § 3553(a) FACTORS SUPPORTS A SUBSTANTIAL DOWNWARD VARIANCE

The overriding mandate of § 3553(a) requires district courts to impose a sentence which is "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2), which are: (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment."); (b) deterrence; (c) incapacitation ("to protect the public from further crimes"); and (d)

rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"). In fulfilling this mandate, courts should not give the Guidelines more weight than any other relevant factor. *United States v. Carty*, 520 F.3d 987, 991 (9th Cir. 2008) (en banc). Additionally, the court "may not presume that the Guidelines range is reasonable." *Peugh v. United States*, 133 S.Ct. 2072, 2080 (2013) (citation omitted).

These admonitions recognize "the principle that the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011). Accordingly, as "information . . . concerning the defendant's life and characteristics" is "[h]ighly relevant – if not essential – to [the] selection of an appropriate sentence," *Pepper*, *supra*, the court must consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The Court must also consider the need to provide victim restitution, which will naturally be hampered by an extended period of incarceration and resulting unemployment, as well as the need to avoid unwarranted sentencing disparities between similarly situated defendants. 18 U.S.C. § 3553(a)(6), (7).

### A. Defendant's background and history are mitigating factors

Defendant was born on March 27, 1983 in Los Angeles, CA. (PSR ¶ 55.) Defendant's father is now deceased and his mother is disabled. (Id.) Defendant is his mother's primary caretaker and he sees her multiple times a week. (Id.) Defendant's father was a philanderer who was frequently absent from the home during Defendant's childhood. (PSR ¶ 57.) When Defendant was in the 5th grade, his father sold the family home and abandoned the family for good, leaving his mother to struggle to meet Defendant and his two siblings' needs. (PSR ¶ 58.)

In 2013, Defendant married Cindy Gonzalez Hansack, with whom he shares two sons: Adan, age 17, and Angel, age 16. (PSR ¶ 60.) In February 2016, Mrs. Hansack tragically passed away, leaving Defendant as a widower and single father. (Id.) Defendant recently began a relationship with a new partner who has two sons as well, but

he has not remarried. (PSR ¶ 61.) After the passing of his wife, Defendant's health has declined. (PSR ¶ 67.)

Defendant holds a high school diploma from South Gate High School and has owned a furniture store in Riverside since 2020. (PSR ¶ 73-74.)

**B.  The impact on Defendant's dependents supports the propriety of a downward variance**

Defendant is the primary caretaker for his elderly and disabled mother. He is a single father supporting two teenage sons. He is the sole breadwinner for his family through his operation of a legitimate furniture store in Riverside. An extended period of incarceration would result in significant financial, emotional, and potentially medical hardship to Defendant's dependents who were uninvolved in the offense conduct. The Court should note that there is substantial overlap in the timing of Defendant's offense conduct and the failing health and ultimate passing of his now-deceased wife. While unacceptable for any reason, aiding and assisting the underpayment of taxes motivated by the financial stress of trying to support one's family is morally, if not legally, less culpable than financing a lavish lifestyle.

## IV.  CONCLUSION

Given Defendant's unreserved acceptance of responsibility and the other significant mitigating factors outlined above, a sentence of 24 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing.

                                        Respectfully submitted,

                                        EISNER GORIN LLP

Dated: June 19, 2023                               */S/ ALAN EISNER*
                                        ALAN EISNER
                                        Attorney for Defendant
                                        ANDREW HANSACK

**LIST OF EXHIBITS**

A. Defendant's Letter to the Court